UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:22-cr-00044-GZS |
| DARIO GIAMBRO, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION TO DISMISS INDICTMENT**

Before the Court is Defendant Dario Giambro's Motion to Dismiss the Indictment (ECF No. 100). Having considered the Motion and related filings (ECF Nos. 116, 118, 123), the Court DENIES the Motion for the reasons stated herein.[1]

**I.   BACKGROUND**

In September 2007, following a one-day jury trial conducted by this Court, Defendant Dario Giambro was convicted of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d), 5841, 5845(a), 5845(e), and 5871. (See D. Me. Docket No. 2:07-cr-41-GZS, ECF No. 82, PageID # 318.) As summarized by the First Circuit, the underlying facts of that case are as follows:

> On the night of February 10, 2006, police were called to Giambro's Auburn, Maine home. Giambro had been in an altercation with Richard McClain, who had been involved in a dispute with Giambro's son and had come to Giambro's house. Giambro claimed he fired two warning shots, one of which ricocheted and hit McClain. Giambro was arrested on state charges but the charges were later dismissed when he was found to have acted in self-defense.

---

[1] To the extent Defendant requests an evidentiary hearing to resolve certain factual "disputes" regarding his conviction in 2007 for possession of an unregistered firearm, the Court DENIES his request based on its finding that the essential facts of that conviction are not in dispute in this case. See Def. Reply (ECF No. 123), PageID # 615. Additionally, the Court finds sufficient basis in the parties' briefing to issue this Order without oral argument on Defendant's Motion. See D. Me. Local R. 7(e).

After the shooting, officers obtained a search warrant and seized 204 firearms from Giambro's home.

United States v. Giambro, 544 F.3d 26, 28 (1st Cir. 2008). One of the firearms seized, later determined to be an unregistered "Marble Game Getter," formed the basis of Defendant's indictment and subsequent conviction in that case. See id.[2] His conviction prohibited him from possessing any firearm or ammunition. See 18 U.S.C. § 922(g)(1).

In January 2022, law enforcement discovered and, after securing a warrant, seized numerous firearms from Defendant's home in Hebron, Maine.[3] Three months later, a federal grand jury charged Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a), based on his possession of sixteen firearms on or about January 26, 2022. (See Indictment (ECF No. 3), PageID #s 2-3.)

## II.   DISCUSSION

In Defendant's Motion to Dismiss the Indictment, he asserts that "section 922(g)(1) is unconstitutionally broad in defining prohibited persons and as applied to him in violation of the Second Amendment." (Def. Mot. (ECF No. 100), PageID # 382.)[4] His argument largely relies on the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022). According to Defendant, "Bruen transformed the Second Amendment landscape" and "creates a presumption that regulations that impinge on gun possession violate the Second

---

[2] As the parties note in their briefing, Defendant was a gun collector and kept this particular firearm as part of his collection. See Def. Mot. (ECF No. 100), PageID # 382; Gov. Mot. (ECF No. 116), PageID # 451; see also 12/28/07 Sentencing Tr. (ECF No. 118), PageID # 525.

[3] The underlying facts of this seizure are set forth in this Court's Order on Defendant's Motion to Suppress (ECF No. 120).

[4] More specifically, Defendant maintains that the Second Amendment prohibits the Government from "criminalizing gun possession by a citizen once convicted of a single non-violent, strict-liability offense such as failing to register a firearm that is not particularly dangerous and that the Government concedes was 'a collector's gun.'" Def. Mot., PageID #s 388-89; see id., PageID #s 396-97.

Amendment." (Def. Reply (ECF No. 123), PageID # 605.) He also asserts that the Second Amendment, as well as the Equal Protection Clause, "precludes the Government from disemboweling [his] right to keep arms based on selective prosecution for a strict liability offense." (Def. Mot., PageID #s 382-83.)

The Second Amendment provides that "the right of the people to keep and bear [a]rms[] shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, Ill., 561 U.S. 742 (2010), the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2122 (2022). The Court made clear, however, "that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" McDonald, 561 U.S. at 786 (quoting Heller, 554 U.S. at 626); see Heller, 554 U.S. at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited."). Mindful of this, the Court reaffirmed the presumptive lawfulness of "longstanding regulatory measures [such] as 'prohibitions on the possession of firearms by felons.'" McDonald, 561 U.S. at 786 (quoting Heller, 554 U.S. at 626).

In Bruen, the Supreme Court revisited its Second Amendment jurisprudence and clarified that the following standard applies when analyzing Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

142 S. Ct. at 2129-30.[5]  Thus, at issue here is whether 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing firearms, meets that standard.  Defendant maintains that it does not.  For the following reasons, the Court concludes that this position "has no more merit than the ninety-plus defendants that have hoed the same row in the past."  United States v. Cummings, No. 1:22-CR-51-HAB, 2023 WL 3023608, at *1 (N.D. Ind. Apr. 20, 2023).

First, Bruen did not disturb the controlling caselaw that came before it.  As the Supreme Court explicitly acknowledged, Bruen "is consistent with Heller and McDonald," which recognized that Second Amendment rights apply to "ordinary, law-abiding citizens."  Bruen, 142 S. Ct. at 2122 (noting that the Second Amendment "'elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense" (quoting Heller, 554 U.S. at 635)).[6]  Those cases, as noted previously, reaffirmed the presumptive lawfulness of "longstanding regulatory measures [such] as 'prohibitions on the possession of firearms by felons.'"  McDonald, 561 U.S. at 786 (quoting Heller, 554 U.S. at 626); see Heller, 554 U.S. at 626, 627 n.26 (characterizing the "longstanding prohibitions on the possession of firearms by felons" as "presumptively lawful regulatory measures").  Keeping with Heller and McDonald, the First Circuit has rejected a constitutional challenge to § 922(g)(1).  See United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011).  Because Bruen has not "unmistakably . . . cast [that decision] into disrepute," this Court is bound by such precedent.  Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within

---

[5] To carry its burden, the government must point to "'historical precedent' from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'"  Bruen, 142 S. Ct. at 2131-32 (quoting Heller, 554 U.S. at 631).

[6] The Court also notes that, in Bruen, five Justices either approved of the passages in Heller discussing prohibitions on felons possessing firearms or noted that Bruen left them intact.  See Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); id. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."), abrogated on other grounds by Carson v. Makin, 142 S. Ct. 1987 (2022); see United States v. Johnson, No. 22-20300, 2023 WL 3431238, at *1 (5th Cir. May 12, 2023) ("[T]here is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional and [] it is not clear that Bruen dictates such a result."). Additionally, "[r]elying on the Supreme Court's clear identification of the Second Amendment right in Heller and Bruen as the right of 'law-abiding' citizens to keep and bear arms, numerous post-Bruen courts have concluded that Section 922(g)(1)['s] disqualifying convicted felons from the Second Amendment's protection is consistent with Bruen." United States v. Walker, No. 3:20-CR-0039, 2023 WL 3020321, at *2 (D.V.I. Apr. 20, 2023) (collecting cases); United States v. Jackson, No. CR221969TUCJGZJR, 2022 WL 18956628, at *4 (D. Ariz. Dec. 9, 2022), report and recommendation adopted, 2023 WL 1965424 (D. Ariz. Feb. 13, 2023) (same); United States v. Carrero, No. 2:22-CR-00030, 2022 WL 9348792, at *3 (D. Utah Oct. 14, 2022) (same). Notably, "after Bruen, no appellate court has held that § 922(g)(1) violates the Second Amendment." United States v. Hill, No. 22-2400, 2023 WL 2810289, at *2 (7th Cir. Apr. 6, 2023). This Court finds no basis to disagree with these precedents.

Second, under the Bruen framework, § 922(g)(1) withstands Defendant's constitutional challenge. At the first step of the Bruen framework, the Court must consider whether "the Second Amendment's plain text covers" the "conduct" proscribed by § 922(g)(1). 142 S. Ct. at 2129-30; see United States v. Rowson, No. 22 CR. 310 (PAE), 2023 WL 431037, at *15 (S.D.N.Y. Jan. 26, 2023) ("[T]he Court's focus in Bruen was not on potentially disqualifying status characteristics of the challengers to the statute. It was instead on whether the Amendment's text covered the "conduct" the statute proscribed."); United States v. Kays, No. CR-22-40-D, 2022 WL 3718519, at *2 (W.D. Okla. Aug. 29, 2022) (noting that "an individual's conduct, rather than status" is what

5

determines whether "Second Amendment protection exists"). In Bruen, it was "undisputed that [the] petitioners . . . – two ordinary, law-abiding, adult citizens – [were] part of 'the people' whom the Second Amendment protects." Id. Because it was also undisputed that "handguns are weapons 'in common use' today for self-defense," the Supreme Court then "turn[ed] to whether the plain text of the Second Amendment protect[ed] [the petitioners]'s proposed course of conduct—carrying handguns publicly for self-defense." Id. Here, in stark contrast, Defendant is not an "ordinary, law-abiding" citizen but rather a convicted felon.[7] He therefore falls outside the scope of the Second Amendment's protections. See Bruen, 142 S. Ct. at 2122 (concluding that, under the Second Amendment, "ordinary, law-abiding citizens have a [] right to carry handguns publicly for their self-defense"); Heller, 554 U.S. at 635 (explaining that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens"). However, recognizing that "there is some debate over the extent to which the [Supreme] Court's 'law-abiding' qualifier constricts the Second Amendment's reach," United States v. Rahimi, 61 F.4th 443, 452 (5th Cir. 2023), the Court proceeds to evaluate whether the Government has sufficiently demonstrated that felon disarmament is "consistent with the Nation's historical tradition of firearm regulation," Bruen, 142 S. Ct. at 2122. Having carefully reviewed the relevant historical tradition, the Court concludes that the Government has satisfied this burden. (See Gov. Response (ECF No. 116), PageID #s 467-89) (detailing the relevant historical tradition); see also United States v. Young, No. CR 22-054, 2022 WL 16829260, at *8 (W.D. Pa. Nov. 7, 2022) (reviewing historical tradition and finding it consistent with "the statutory prohibition of felons possessing firearms (and ammunition)"); Medina v. Whitaker, 913 F.3d 152, 159 (D.C. Cir. 2019) (reviewing historical evidence and concluding that

---

[7] Additionally, unlike the petitioners in Bruen, Defendant has not alleged that any of the sixteen firearms allegedly found in his possession on January 26, 2022 (as charged by the Indictment) were for self-defense purposes.

6

"the public in the founding era understood that the right to bear arms could exclude at least some nonviolent persons").[8]  In sum, the Court falls in line with the numerous other courts that have concluded that the § 922(g)(1) is consistent with the Second Amendment.

Defendant fares no better with respect to his as-applied challenge to § 922(g)(1).  After Heller and before Bruen, the First Circuit mused that "the Supreme Court may be open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban."  Torres-Rosario, 658 F.3d at 113.  In Torres-Rosario, the First Circuit therefore "assum[ed] *arguendo* that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify [§ 922(g)(1)'s] ban" but concluded that drug dealing, for which the defendant had been convicted, was "not likely to be among them."  Id.  Notably, as the Government highlights, the First Circuit also "expressed deep skepticism of as-applied challenges to Section 922(g)(1) in *Torres-Rosario*."  (Gov. Response, PageID # 456); see Torres-Rosario, 658 F.3d at 113 (noting that an approach that allows defendants to make "highly fact-specific objections" to § 922(g)(1)'s ban based on "individual circumstances[] would obviously present serious problems of administration, consistency and fair warning").  However, to the extent that certain "tame and technical" felonies may be exempt from § 922(g)(1), the Court concludes that Defendant's 2007 conviction does not fall within the realm of those felonies.  Rather, his "unlawful possession of" a firearm required to be registered under 26 U.S.C. § 5845(a)[9] "involve[d] a conjunction of

---

[8] Moreover, to the extent Defendant challenges the Government's recitation of the relevant historical tradition, the Court notes that the Government is required to "identify a well-established and representative historical analogue, not a historical twin." Bruen, 142 S. Ct. at 2133; see Def. Reply, PageID # 611. Thus, "even if a modern-day regulation" like § 922(g)(1) "is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Bruen, 142 S. Ct. at 2133. The Court finds that § 922(g)(1) meets this standard.

[9] To the extent Defendant suggests that the Marble Game Getter was a "collector's item" and therefore exempt from the registration requirements of 26 U.S.C. § 5845(a), see Def. Mot., PageID # 384 n.1, the

7

disregard for law and the risk of use and injury." United States v. Bishop, 453 F.3d 30, 31-32 (1st Cir. 2006); see id. at 31("Congress has determined that those firearms described in 26 U.S.C. § 5845(a) are inherently dangerous and when possessed unlawfully, serve only violent purposes." (quoting U.S. Sentencing Guidelines Manual app. C supp., amend. 674, at 134 (2004))); see also Giambro, 544 F.3d at 28 (describing 26 U.S.C. § 5845(a)'s registration requirements and the features of the Marble Game Getter, the unregistered firearm Defendant was convicted of possessing).[10]

Finally, the Court briefly addresses Defendant's argument under the Equal Protection Clause. He asserts that he "was selectively prosecuted in 2007 for the express purpose of revoking his Second Amendment rights" as punishment for exercising such rights. (Def. Mot., PageID # 397; see Def. Reply, PageID #s 614, 617.) Because he never raised any selective prosecution defense during his 2007 prosecution and has not shown good cause for this Court to now consider such a defense, he has waived it. See Fed. R. Crim. P. 12(b)(3)(A)(iv) (providing that selective prosecution defense "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits"); Fed. R. Crim. P.

---

Court notes that he stipulated in his 2007 case to possessing a weapon as defined in § 5845(a), see Giambro, 544 F.3d at 28. In doing so, he effectively conceded to possessing a weapon which was, by definition, not a collector's item. See United States v. McCarty, 475 F.3d 39, 48 (1st Cir. 2007) ("[B]y pleading guilty to possessing a firearm as defined in § 5845(a), [the defendant] pled guilty to possessing a weapon which was, by definition, not an 'antique firearm.'"). Additionally, his assertion that "[t]here was [] no evidence that [he] knew that the [Marble Game Getter] needed to be registered or that he had any intent to flout the law," Def. Reply, PageID # 616, is flatly belied by the facts of that case, as summarized by the First Circuit. See Giambro, 544 F.3d at 30 (concluding that "[t]here was evidence in the record to support a finding that Giambro had knowledge of each of the statutory characteristics" of the Marble Game Getter).

[10] Moreover, even plainly non-violent felony convictions have been found to be appropriately excluded from the Second Amendment's protections. See, e.g., Medina v. Whitaker, 913 F.3d 152 (D.C. Cir. 2019), 154 (making a false statement on a bank loan application); Hamilton v. Pallozzi, 848 F.3d 614, 626 (4th Cir. 2017) (credit card fraud, theft, and forgery); United States v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010); United States v. Rozier, 598 F.3d 768, 771 (11th Cir. 2010); Zherka v. Garland, 593 F. Supp. 3d 73, 75, 79 (S.D.N.Y. 2022) (conspiracy to make false statement to bank and file false federal income tax return).

12(c)(3) (providing that a court may consider an untimely 12(b)(3) motion upon a showing of good cause). Moreover, contrary to Defendant's assertions, he was not prosecuted "because he lawfully exercised his Second Amendment right to defend his home." (Def. Mot., PageID # 398.) He was prosecuted for his unlawful possession of an unregistered firearm. Lastly, and critically, Defendant has not established the *prima facie* elements of a selective prosecution claim, namely "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon . . . the desire to prevent his exercise of constitutional rights." Tracey v. United States, 739 F.2d 679, 683 (1st Cir. 1984) (citations omitted). Accordingly, his Equal Protection claim fails.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment (ECF No. 100) is hereby DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 30th day of May, 2023.