**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:22-cr-00044-GZS |
| DARIO GIAMBRO, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON MOTION FOR RECUSAL**

Before the Court is Defendant Dario Giambro's Motion for Recusal (ECF No. 128). Having considered the Motion and related filings (ECF Nos. 129, 131-32), the Court DENIES the Motion for the reasons stated herein.

**I.     PROCEDURAL BACKGROUND**

**A.     The 2007 Case[1]**

On May 15, 2007, Defendant Dario Giambro was arrested on an indictment charging him with possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d), 5841, 5845(a), 5845(e), and 5871.  (See generally ECF Nos. 1 & 37.)  Following initial concerns about Giambro's competency, U.S. Magistrate Judge Cohen found him competent to stand trial.  (See generally ECF Nos. 16, 18, 22, 23, 28.)  On June 26, Judge Cohen held a detention hearing and ordered that Giambro be released pending trial on conditions that included a $250,000 appearance bond, to be "secured by deed(s) of trust acceptable to the U.S. Attorney."  (ECF No. 36, PageID # 26; see ECF No. 35.)  Because Giambro did not satisfy the conditions for his pretrial release, however, he remained detained pending trial.

---

[1] All docket entry citations in this subsection refer to District of Maine Docket No. 2:07-cr-00041-GZS.

In September 2007, following a one-day jury trial conducted by this Court, Giambro was convicted.  (See ECF No. 77, PageID # 316; Jury Verdict (ECF No. 82), PageID # 318.)  The following month, the Court ordered that he be released on specified conditions while awaiting sentencing, including a $250,000 cash bond.  (See ECF No. 103, PageID # 338.)  By that point, Giambro had been detained for approximately five months.  After Giambro satisfied the requisite conditions, he was released to home detention pending his sentencing.  (See generally ECF Nos. 105-08, 113, 147.)

In connection with Giambro's sentencing, the U.S. Probation Office ("Probation") prepared a Revised Presentence Investigation Report (the "PSR") in which it noted, inter alia, that Giambro had provided conflicting and materially false information regarding his prior addresses and the whereabouts of his driver's license and passport.  (See generally PSR, ¶s 8-10.)  Probation opined that this conduct, which occurred while Probation was attempting to confirm Giambro's identity during its presentence investigation, warranted an obstruction-of-justice enhancement.  (See id., ¶ 10.)

At the December 28 sentencing hearing, this Judge considered Giambro's objection to the proposed obstruction enhancement and inquired about certain discrepancies between what Giambro had told Probation and what Probation had subsequently determined to be true.  For example, this Judge noted that, despite Giambro's representation that a bank account he appeared to own was in fact held in trust under his son's name, Probation subsequently determined that the bank account was a savings account in Giambro's name.  (See 12/28/07 Sentencing Tr. (ECF No. 148), PageID #s 759-60.)  To rationalize this discrepancy, Giambro's then-counsel offered the explanation that there had been no formal trust document and that, although the account was apparently in Giambro's name, it held money intended for his son.  (See id.)  This Judge also noted that, despite Giambro's representation that he held a separate checking account with a negative

$250 balance, he had recently paid a $50,000 settlement that was not reflected as a withdrawal on that account.  (See id., PageID #s 762-63, 776.)  After hearing from both parties, this Judge ultimately determined that the obstruction-of-justice enhancement was warranted for the reasons stated in the PSR.  (See id., PageID # 764.)

Before imposing sentence, this Judge noted that Giambro had "been less than candid with the Court, and in many ways on a different charge [he would] be facing some increase in [his] sentence because of the manner that [he had] treat[ed] the Court." (Id., PageID # 781.)  However, after calculating an applicable guideline range of 33 to 41 months, this Judge concluded that a time-served sentence, along with a three-year period of supervised release, was the appropriate, variant sentence.  (See id. at 780-81.)  Addressing Giambro directly, this Judge further explained this sentence and its implications as follows:

> Let me indicate something to you. If you are possessing any firearms, and that means if they're in your house where you live, if you are in the presence of people possessing firearms, you will be arrested, because you can never again for the rest of your life be in the presence of firearms where you are possessing them, constructively or actually. I want you to understand that because you have a feeling that rules may not always apply to you if you think the Government is intruding in your affairs . . . .
>
> I want you to understand that during the next three years probation will be carefully monitoring what's going on in your home and otherwise. And don't think you're going to put one over on anyone. Because if you get arrested again on a felony charge of possessing firearms, you may well appear before me. And, Mr. Giambro, you're not going to be a very happy person when that happens, considering the break I'm giving you today.
>
> I want you to be aware that the break I'm giving you today is a substantial reduction from the advisory guidelines. And I'm doing this not because you're a swell person and not because I feel you've been straight with the Court, but simply because I believe that the punishment you've received is fully adequate and any additional punishment would be more than adequate. And our system of justice doesn't permit that. And that's why I'm doing it and not because of anything with regard to your behavior in court or your behavior with regard to the probation office in terms of your truthfulness.

(Id., PageID #s 781-83.)  In addition to his already served five months of incarceration, Giambro was fined $50,000, which he timely paid.  (See 1/08/2008 Judgment (ECF No. 121), PageID # 364; 1/16/08 Satisfaction of Judgment (ECF No. 123), PageID # 367.)  Giambro immediately began his three-year term of supervised release on December 28, 2007.[2]  (See ECF No. 115.)

### B.     The 2022 Case[3]

In January 2022, law enforcement discovered and, after securing a warrant, seized numerous firearms from Giambro's home in Hebron, Maine.[4]  Three months later, a federal grand jury charged Giambro with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a), based on his possession of sixteen firearms on or about January 26, 2022. (See ECF No. 3, PageID #s 2-3.)  In May, he was arrested, and the Government moved for his detention pending trial, noting that "the case involves a felony involving a firearm" and that the Government would "invoke the rebuttable presumption against the defendant under 18 U.S.C. § 3142(e)."  (ECF No. 10, PageID # 13.)  On May 18, Giambro appeared before U.S. Magistrate Judge Wolf for his arraignment, represented by a provisionally appointed attorney.  (See ECF No. 13.)  Judge Wolf ordered him "temporarily detained without bail, pursuant to 18 U.S.C. § 3142(f)."  (ECF No. 15, PageID # 17.)

On May 24, Judge Wolf presided over a detention hearing for Giambro.  At the outset of that hearing, Giambro's then-counsel indicated that Giambro opposed the Government's motion for detention and would "rebut the presumption and show that. . . there [were] conditions that can

---

[2] During this three-year term of supervised release, Probation filed one petition to revoke Giambro's supervised release based on his failure to comply with the home search condition.  See ECF No. 133, PageID #s 733-35.  Giambro admitted this violation, and the Court imposed a time-served sentence of nine days of incarceration, followed by two years of supervised release.  See ECF No. 144, PageID #s 743-44.

[3] All docket entry citations in this subsection refer to the instant case, District of Maine Docket No. 2:22-cr-00044-GZS.

[4] The underlying facts of this seizure are set forth in this Court's Order on Giambro's Motion to Suppress (ECF No. 120).

assure the Court that Mr. Giambro [would] come to court as indicated and [would] not pose any type of danger to the community."  (See 5/24/22 Det. Hearing Tr. (ECF No. 74), PageID # 212.) After hearing from counsel and reviewing the evidence presented, Judge Wolf ordered that Giambro be detained pending trial.  In explaining her decision on the record, Judge Wolf noted that "this is a presumption case" but that the presumption had been "rebutted with evidence" such as Giambro's age and infirmity.  (See id., PageID # 221.)  She proceeded to explain, however, that other factors – such as Giambro's resources, his ownership of property in both the United States and Canada, his inability to locate and relinquish his passport, his past conduct, and the Government's evidence regarding numerous firearms found at his home – weighed in favor of detention.  (See id., PageID #s 221-24.)  While she ultimately determined that Giambro could not be released on the record presented, Judge Wolf did "implore [Giambro and his counsel] . . . to explore other possibilities" and suggested that release could be feasible with "an extraordinarily detailed release plan."  (See id. at 225.)  In a written detention order docketed the following day, Judge Wolf noted that Giambro was eligible for detention under 18 U.S.C. § 3142(f)(1)(E) and further explained her consideration of the 18 U.S.C. § 3142(g) factors.  (See 5/25/22 Det. Order (ECF No. 21), PageID #s 25-28.)  At both the hearing and in her written order, Judge Wolf found that the Government had demonstrated by clear and convincing evidence that no set of conditions could reasonably assure the community's safety.  (See 5/24/22 Det. Hearing Tr., PageID # 225; 5/25/22 Det. Order, PageID # 25.)[5]

---

[5] Unlike the transcript of the May 24, 2022 detention hearing, Judge's Wolf's written detention order does not indicate that she applied any presumption of detention.  Compare 5/24/22 Det. Hearing Tr., PageID # 221 with 5/25/22 Det. Order, PageID #s 25-28.  While the written order has been available on the public docket since May 25, 2022, the transcript of the detention hearing was docketed on January 13, 2022, in connection with the Court's consideration of Giambro's Motion to Reopen the Detention Hearing and for Pretrial Release on Conditions (ECF No. 61).

On May 31, the Government filed an unopposed motion requesting that this Court order Giambro to submit to a psychiatric examination, citing concerns about his mental state. (See ECF No. 23, PageID # 37.) The Court promptly granted this motion. (See ECF No. 24.) In the four months that followed, the Court convened a total of three conferences (see ECF Nos. 31, 39, 47), held two hearings (see ECF Nos. 35 & 39), and resolved five motions (ECF Nos. 29, 33, 40, 42, 51). In resolving these motions, the Court: appointed Giambro a new attorney, William Maselli (see ECF Nos 36 & 37); found no reasonable basis to believe Giambro was mentally incompetent and therefore did not require him to undergo a psychiatric evaluation supervised by the Bureau of Prisons or submit to the associated medical testing (see ECF Nos. 41, 50); and, at Giambro's request, extended the deadline for motions and continued trial to January 2023 (see ECF No. 54, PageID #s 94-95).

In December, Attorney Maselli withdrew from the case, and Giambro's presently retained counsel, Edward MacColl, entered his appearance. (See ECF Nos. 59, 60, 62.) Shortly thereafter, Attorney MacColl moved to reopen the detention hearing, which the Court granted. (See ECF Nos. 61 & 63.) He also filed a Motion to Suppress all evidence obtained from Giambro's home in January 2022. (See generally ECF No. 65.)

At the reopened detention hearing on January 10, 2023, this Judge acknowledged that Government counsel and Attorney MacColl had reached an agreement on conditions for Giambro's pretrial release, including a $1,000,000 cash bond. (See 1/10/23 Det. Hearing Tr. (ECF No. 82), PageID # 299-300.) In light of the entire record, which notably included evidence that Giambro's son had moved in state court for a conservatorship over Giambro's assets,[6] this Judge expressed concern that Giambro intended to post bail with money from a bank account that,

---

[6] See Def. Ex. B (ECF No. 61-2). This Petition for Conservatorship included a "Bank of America account" with an estimated value of $2,000,000 to $3,000,000. See id., PageID # 133.

according to the Pretrial Services Report, was earmarked in trust for the benefit of Giambro's son. (See id., PageID #s 299-300; Pretrial Services Report, PageID # 20.)  In response, Attorney MacColl indicated that, although Giambro did not have access to the account at the time of his prior detention hearing, a new account opened in March provided him with access to the money.  (See 1/10/23 Det. Hearing Tr., PageID #s 300, 304-05.)  Attorney MacColl also shared his understanding that the funds were "not in a formal trust arrangement" and that, although the funds were earmarked for Giambro's son, "he is allowed to use them for his own purposes."  (Id., PageID #s 301-02.)  This Judge then noted that the Court has "had problems with what [his] client's been telling probation going back to 2007 because . . . when he says one thing we find out another."  (Id., PageID # 303.) After Attorney MacColl indicated that he was "relaying what [his] client told [him]," this Judge noted: "I really need to know more than what your client is telling you because his credibility isn't at the highest level."  (Id., PageID # 304.)

Beyond the issues with the source of Giambro's bail, this Judge also expressed his concern that there was insufficient evidence to overcome the Magistrate Judge's finding related to community safety.  Specifically, this Judge wondered how, if he released Giambro pending trial, Giambro could be prevented from regaining access to a firearm.  (See id., PageID #s 309-11, 314, 317-18.)  To help illustrate the basis for such concern, this Judge reminded the parties of his statement to Giambro at the 2007 sentencing hearing that Giambro would be arrested if he possessed any firearms, as he could "never again for the rest of [his] life be in the presence of firearms where [he was] possessing them, constructively or actually."  (Id., PageID # 310.)  This Judge also reiterated his warning to Giambro that Probation would monitor him for the next three years and that he would not "be a very happy person" if he later appeared before the same Judge for "a felony charge of possessing firearms."  (Id., PageID # 311.)  Given that Giambro had again "surrounded

himself with guns the same way he did previously" despite these warnings, the Judge expressed doubt that Giambro could abide by pretrial release conditions.  (Id., PageID #s 317-18; see id., PageID # 311.)[7]  The Government acknowledged this concern and stated: "frankly that quote is going to be Government Exhibit 1 at any trial because we have to prove under Rehaif he knew he was prohibited."  (Id., PageID # 311.)  Additionally, there was an issue with the parties' proposed search conditions.  Although the Government had suggested a pretrial condition of release allowing Probation to search Giambro's residence, Probation indicated that such a condition was not permitted because it ran afoul of the Fourth Amendment.[8]  (See id., PageID #s 309-12.)

At the end of the hearing, this Judge indicated that it required additional evidence regarding the source of Giambro's proposed $1,000,000 bail and a set of conditions that it considered a necessary part of any release plan.  (See id., PageID # 320, 323-24.)  This Judge therefore declined to disturb the standing detention order and continued the reopened detention hearing.  (See id., PageID # 324.)

The Court reconvened the detention hearing two weeks later on January 26. (See ECF No. 84.)  After considering Giambro's proposed order containing a new set of pretrial release

---

[7] During this discussion, Attorney MacColl noted that, although Giambro initially refused to allow Probation to conduct searches of his home when he was on his first term of supervised release, he completed his second term of supervised release without incurring any violations.  See 1/10/23 Det. Hearing Tr., PageID #s 316-19.  This Judge responded:

> [T]he . . . bigger problem in my mind isn't whether he was on supervised release and obeyed the rules. It's clear that when he finished supervised release he didn't care what I told him [at the 2007 sentencing hearing] whatsoever, didn't mean a thing to him. He surrounded himself with guns the same way he did previously. Now that's a far more serious failure to obey than -- than telling the probation officer I'm not going to let you in the house.

> Here is a man that was told at his earlier sentencing you can't have any guns, period, at all, and lo and behold in 2022 he has got 800 of them. Now what does that tell you about someone who can obey rules?

(Id., PageID #s 317-18.)

[8] Attorney MacColl denied that "there [was] any constitutional prohibition against a defendant proposing" and agreeing to a pretrial search condition.  1/10/23 Det. Hearing Tr., PageID #s 315-16.

conditions (ECF No. 75-4), to which the Government had assented, and records indicating that Giambro was the owner of the disputed funds (ECF Nos. 75-1 – 75-3), this Judge ordered that Giambro be released once he posted a $ 1,000,000 cash bond and complied with all other specified conditions for his release.  (See ECF No. 84; No. 85, PageID # 329.)  Giambro was released the following day, having satisfied those conditions and posted the requisite bond.  (See ECF No. 86, PageID # 330.)

In February, while his Motion to Suppress was under advisement, Giambro filed a Motion to Dismiss the Indictment on the basis that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), "is unconstitutionally broad in defining prohibited persons and as applied to him in violation of the Second Amendment." (ECF No. 100, PageID # 382.)  The Court entered an order denying the Motion to Suppress on April 27 (ECF No. 120) and an order denying the Motion to Dismiss on May 30 (ECF No. 126).  On June 20, following the Court's resolution of these pretrial motions, the Clerk's Office published a criminal trial list indicating that the instant case was among those scheduled for trial in Portland in August.  (See ECF No. 127.)  Three days later, Giambro filed the instant Motion for Recusal.

## II.    THE MOTION

In his pending Motion for Recusal, Defendant "requests that the Judge recuse himself and vacate his orders on [D]efendant's motion to dismiss and motion to suppress." (Def. Mot. (ECF No. 128), PageID # 671.)  He cites the following as evidence of an "appearance of partiality or impropriety" by this Judge:

(1) This Judge's statements at the 2007 sentencing hearing, which included a description of Giambro as "less than candid" and a warning to Giambro that he would not "be a

very happy person" if he were "again arrested on a felony charge of possessing firearms and . . . appear[ed] before" the Judge (12/28/07 Sentencing Tr., PageID # 782);

(2) This Judge's statements at the January 10 reopened detention hearing in the instant case, which included a reference to the 2007 warning and a suggestion that Defendant's failure to heed such warning was "a far more serious failure to obey than" refusing to allow Probation to search his home during supervised release (1/10/23 Det. Hearing Tr., PageID #s 317-18);

(3) This Judge's decision at the January 10 hearing to not immediately release Defendant on conditions jointly proposed by counsel and to instead continue the hearing with a request for further information;

(4) This Judge's refusal to sign a consent order requiring Defendant's bank to release his account funds so that he could post bail and refusal to release Defendant so that he could visit the bank in-person and withdraw the funds himself; and

(5) The Government's indication that it may introduce, as evidence at trial, a transcript of the 2007 sentencing hearing, including statements made by this Judge as reflected in that transcript.

(See Def. Mot., PageID #s 661-67; see also Def. Reply (ECF No. 132), PageID #s 782-83.) Defendant also takes issue with the fact that this Judge "did not acknowledge" that the "Magistrate Judge had mistakenly applied a presumption against [his] release," which "surely" would have been apparent from this Judge's review of the transcript of the detention hearing. (Def. Mot., PageID # 664.)

In support of his Motion for Recusal, Defendant filed a sworn Declaration outlining many of the same circumstances addressed in his Motion and further elucidating how he has personally

perceived this Judge's statements and rulings.  (See, e.g., Def. Decl. (ECF No. 128-1), PageID # 673, ¶ 2 ("I respectfully ask that Judge Singal recuse himself from this case, because, among other reasons I believe he has a fixed opinion of me and the case and that his opinion affects his ability to treat me fairly and because the government has stated that it plans to introduce Judge Singal's words against me as evidence at trial."); id., PageID # 674, ¶s 5 ("I have felt that Judge Singal has not treated me fairly, and that the does not want to do so."), 7 ("Judge Singal seemed predisposed to not releasing me."); id., PageID # 675, ¶s 12 ("It felt like he was not being fair with me . . . ."), 13 ("I am concerned he was making good on his promise that I would not 'be happy.'").)

## III.   DISCUSSION

Defendant's Motion invokes both 28 U.S.C. §§ 144 and 455, two separate statutory bases under which a district court judge must recuse himself from a proceeding.

28 U.S.C. § 144 requires a judge to recuse himself from a proceeding when a party in that proceeding "files a timely and sufficient affidavit that the judge . . . has a personal bias or prejudice either against him or in favor of any adverse party."  The affidavit must state the facts and the reasons for the belief that bias or prejudice exists, and it must "be accompanied by a certificate of counsel of record stating that it is made in good faith."  Id.  "[T]he district judge [must] accept the affidavit as true even though it may contain averments that are false and may be known to be so to the judge."  In re Martinez-Catala, 129 F.3d 213, 218 (1st Cir. 1997).  However, when a party alleges a bias or prejudice pursuant to section 144, "a trial judge is not required immediately to recuse himself."  United States v. Kelley, 712 F.2d 884, 889 (1st Cir. 1983).  "Although the trial judge may not pass on the truth of the matters asserted, the trial judge must pass upon the legal sufficiency of the affidavit."  Id. (citations omitted).

28 U.S.C. § 455 provides, in relevant part, that a judge must disqualify himself from a proceeding when: "his impartiality might reasonably be questioned," § 455(a); "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," § 455(b)(1); or he "[i]s to [his] knowledge likely to be a material witness in the proceeding," § 455(b)(5)(iv).  "The test to determine whether a judge should be disqualified for alleged partiality [under § 455(a)] . . . 'is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.'"  Kelley, 712 F.2d at 890 (citation omitted).

"Since sections 144 and 455 of 28 U.S.C. use similar language, and are intended to govern the same area of conduct, they have been construed *in pari materia*, and the test of the legal sufficiency of a motion for disqualification is the same under both statutes."  Id. at 889.  Under both sections, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky v. United States, 510 U.S. 540, 555 (1994); see Kelley, 712 F.2d at 889 ("Facts learned by a judge while acting in his judicial capacity cannot serve as a basis for disqualification on account of personal bias.").[9]  Another "essential element" under both section 144 and 455 is timeliness.  United States v. Owens, 902 F.2d 1154, 1155 (4th Cir. 1990); see 28 U.S.C. § 144 (requiring a "timely" affidavit); United States v. Barrett, 111 F.3d 947, 951

---

[9] The Supreme Court has characterized this principle, commonly known as the "extrajudicial source *doctrine*," as "a significant (and often determinative) 'extrajudicial source' *factor*" to be considered, among other factors, when reviewing a motion for recusal.  Liteky, 510 U.S. at 554-55.

(D.C. Cir. 1997) ("[W]hile section 455(a) contains no express timeliness provision, most circuits considering the matter have concluded that a litigant must raise the disqualification issue within a reasonable time after the grounds for it are known."); see also In re United Shoe Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960) ("The requirement of timeliness [in filing recusal motions] is of fundamental importance."). Accordingly, "[c]laims of judicial partiality must be raised at the earliest moment that a litigant becomes cognizant of the purported bias." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 857 (1st Cir. 1998).[10]

"The decision to grant or deny a motion for disqualification is committed largely to the discretion of the trial court." United States v. Giorgi, 840 F.2d 1022, 1034 (1st Cir. 1988). Such discretion is to be exercised "with the understanding that, 'if the question of whether § 455 [or § 144] requires disqualification is a close one, the balance tips in favor of recusal.'" In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001), as amended on denial of reh'g and reh'g en banc (Mar. 2, 2001). However, a judge "has a duty not to recuse himself or herself if there is no objective basis for recusal." In re United States, 441 F.3d 44, 67 (1st Cir. 2006); see Brody v. President & Fellows of Harvard Coll., 664 F.2d 10, 12 (1st Cir. 1981) ("There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." (citation omitted)).

---

[10] According to section 144, a party moving for recusal thereunder must file the requisite affidavit "not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause [must] be shown for failure to file it within such time." Id. However, "[t]he 10–day rule has been an anachronism since 1963, when Congress abolished formal terms of court for United States district courts." Liteky, 510 U.S. at 560 (Kennedy, J., concurring). Accordingly, it "no longer is applied literally." Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 624 (S.D.N.Y. 2008); see 13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3551 (3d ed. 2023). Rather, as explained above, courts now require that motions for recusal be filed "at the earliest moment that a litigant becomes cognizant of the purported bias." Rodriguez-Hernandez, 132 F.3d at 857.

### A.      Defendant's Motion Fails on Timeliness Grounds

At the outset, the Court finds that Defendant's Motion is untimely, as Defendant "already knew all the essential facts on which he based his recusal motion" by the end of January 2023 but "chose to wait to seek [the Judge's] recusal until after" his Motion to Suppress and Motion to Dismiss were denied in April and May, respectively. Owens, 902 F.2d at 1156. Notably, he filed the instant Motion in late June, three days after the Clerk's Office published the criminal trial list indicating that his case was among those scheduled for trial in August. Defendant's only explanation as to why he filed the instant Motion at such time (over five months after the alleged disqualification bases arose) is that he and "his counsel decided to file the motion only after obtaining and thoroughly reviewing all relevant transcripts and carefully evaluating the evidence." (Def. Reply, PageID # 785.) Put simply, "[t]his is manifestly too late." Id.; see In re United Shoe, 276 F.2d at 79 ("[A] party knowing of a ground for requesting disqualification[] can not be permitted to wait and decide whether he likes the treatment that he receives."); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1472 (11th Cir. 1986) ("Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning of the court's ruling on the merits."); United States v. Greenspan, 26 F.3d 1001, 1006 (10th Cir. 1994) ("[S]ection 455 . . . is not intended to be used as a forum shopping statute."); see, e.g., In re Cargill, Inc., 66 F.3d 1256, 1263 (1st Cir. 1995) (recognizing "red flag" where litigant "deferred any recusal initiative" until the court's "ruling on the motion to dismiss" proved to be "greatly disappointing"); United States v. Betts-Gaston, 860 F.3d 525, 538 (7th Cir. 2017) (concluding that recusal motion was untimely because it was filed four months after alleged bases for disqualification arose); Kelley, 712 F.2d at 887 (finding recusal motion was untimely because it was filed more than three months after alleged disqualification bases arose). Additionally,

Defendant has not shown good cause for his delay in seeking recusal.  While "litigants are naturally reluctant to make such motions" (Def. Reply, PageID # 785), so too are courts naturally reluctant to grant a belated request for recusal on the eve of trial.[11]

### B. Defendant's Motion Fails on the Merits

Although Defendant's untimeliness is sufficient reason to deny his Motion, see Kelley, 712 F.2d at 888, the Court nevertheless addresses the merits of his Motion.  On the merits, his Motion fails on several grounds.

First, Defendant has not alleged that this Judge acquired any facts outside of his judicial capacity that might have resulted in any bias or prejudice toward Defendant.  Rather, the grounds he advances "consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses." Liteky, 510 U.S. at 556.  "All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Id.  Additionally, while Defendant may take issue with certain of this Judge's statements, "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Id.  Defendant has offered no bases to suggest that this Judge's comments are even close to exceeding the standard.

Second, this Judge's "ordinary and natural reactions to" Defendant's conduct do not create a basis for disqualification.  In re Union Leader Corp., 292 F.2d 381, 388-89 (1st Cir. 1961).  As such, this Judge's statements regarding Defendant's credibility – which were based on his own

---

[11] Additionally, Defendant's Motion failed to include the requisite certificate of counsel stating that his Declaration (ECF No. 128-1) was made in good faith.  See 28 U.S.C. § 144.  However, following the Government's Opposition, which noted this deficiency, Defendant filed the certificate.  (See generally ECF No. 131.)

documented misrepresentations – do not create a basis for disqualification.  See Liteky, 510 U.S. at 551 (citation omitted) ("Impartiality is not gullibility."); see also Kelley, 712 F.2d at 890 ("[E]ven when a judge has made a negative determination regarding a party's credibility in a prior proceeding, the judge is not required to recuse himself from presiding at a subsequent proceeding involving the same party.").  Nor is recusal implicated by this Judge's warning to Defendant at his 2007 sentencing.  According to Defendant, he "understood [this Judge's] statement that he would not 'be a very happy person' if he were again to appear before the Judge as a threat."  (Def. Mot., PageID # 662; see Def. Decl., PageID # 673, ¶ 4.)  He further asserts that, "[w]hen, fifteen years later, [he] was charged with possessing firearms, the Judge appeared to presume the charge to be true and to deem it a personal affront to his authority."  (Def. Mot., PageID # 662.)  His support for this assertion is that, at the January 10 detention hearing, this Judge reiterated the statements made to Defendant at the 2007 hearing.  (See id.)  Notably, this reiteration occurred during the Court's colloquy with Government counsel as part of an effort to better understand the Government's position on ensuring community safety and the likelihood that Giambro would follow conditions related to firearms.  (See 1/10/23 Det. Hearing Tr., PageID # 311.)  Critically, "[t]he test to determine whether a judge should be disqualified for alleged partiality . . . 'is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, *not in the mind . . . of the litigant* filing the motion under 28 U.S.C. § 455, but rather *in the mind of the reasonable man*.'"  Kelley, 712 F.2d at 890 (emphasis added).  In context, this Judge's statements do not create a reasonable doubt concerning his impartiality.[12]

---

[12] The Court also notes that Magistrate Judge Wolf similarly invoked the same portions of the 2007 sentencing transcript in reaching her decision regarding detention in May 2022.  See 5/24/22 Det. Hearing Tr., PageID # 223; Det. Order, PageID # 27.  Additionally, if Defendant perceived this Judge's December 2007 statement as a threat, he was obliged to raise any request for recusal when this case was initially assigned to this Judge.  See Rodriguez-Hernandez, 132 F.3d at 857.

Moreover, Defendant offers no factual basis for his belief that this Judge "presume[d] the charge to be true and [] deem[ed] it a personal affront to his authority" (Def. Mot., PageID # 662). Rather, he draws on this Judge's well-founded concerns regarding his ability to be fully truthful with the Court and abide by its instruction as evidence that the Judge has "prejudged" him and is "personally aggrieved by" him.  (See, e.g., Def. Reply, PageID #s 782-83.)  Given the record of Defendant's conduct before the Court, a reasonable person would not conclude that this Judge's statements to Defendant demonstrated any prejudgment or feeling of personal aggrievement by this Judge.  See In re Union Leader, 292 F.2d at 388-89; see also Liteky, 510 U.S. at 551 ("[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings.  It has long been regarded as normal and proper for a judge to sit in . . . successive trials involving the same defendant.").

Third, recusal is not implicated by Defendant's assertion that this Judge "did not acknowledge" at the January 10 reopened detention hearing that the "Magistrate Judge had mistakenly applied a presumption against [D]efendant's release" (Def. Mot., PageID # 664).[13] Defendant suggests that this "Judge would surely have realized" the alleged error upon reading the transcript of the prior detention hearing, a copy of which "neither [D]efendant nor his lawyer" had at the time.  (Id.; see Def. Decl., PageID # 674, ¶ 6; Def. Reply, PageID # 784.)  Notably, however, Defendant's own counsel was the first person to suggest at the initial detention hearing that such a presumption applied.  (See 5/24/22 Det. Hearing Tr., PageID # 212.)  Additionally, the detention order that entered followed the hearing did not note any presumption.  Instead, the Magistrate Judge set forth multiple bases supporting her conclusion that no set of then-available conditions

---

[13] Under 18 U.S.C. § 3142(f), individuals charged with certain offenses face a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  Defendant's charged offense does not fall within those category of offenses to which the presumption applies.

could reasonably have assured the community's safety or Defendant's appearance.  (See 5/25/22 Det. Order, PageID #s 25-28.)  Because the detention order reflects the official post-hearing ruling, the Court readily concludes that the references made at the hearing regarding the application or rebuttal of any presumption were harmless.[14]  Separately, nothing barred Defendant or his present counsel from obtaining a copy of the May 24 detention hearing transcript prior to seeking to reopen the detention hearing and identifying any error they perceived.  Their failure to do so does not bear on this Judge's impartiality.

According to Defendant, it was also telling that this Judge, at the January 10 hearing, chose not to release him with a condition that would, per the parties' agreement, allow Probation to search his home for any firearms (provided there was reasonable articulable suspicion).  (See Def. Mot., PageID # 665; see also 1/10/23 Det. Hearing Tr., PageID # 309.)  Defendant fails to acknowledge, however, that Probation unequivocally indicated that it could not impose such a condition, citing Fourth Amendment concerns arising from warrantless searches of defendants on pretrial release.  (See 1/10/23 Det. Hearing Tr., PageID #s 309-10.)  Defendant also faults this Judge for requiring, before allowing pretrial release, additional information regarding the ownership of the funds from which Defendant intended to post bail.  (See Def. Mot., PageID # 666.)  In light of Defendant's historical misrepresentations to the Court and Probation, conflicting information regarding the ownership of the funds, and Attorney MacColl's representation that he was simply "relaying what [his] client told [him]" about the funds,[15] this Judge had a duty to further examine the source of Defendant's bail funds and to ensure that the proposed release conditions

---

[14] The Court also notes that, while it is unclear that a presumption was applied in error, "the principle that a judge's rulings and statements in the course of proceedings before him or her rarely provide a basis for recusal . . . applies even to misjudgments."  In re United States, 441 F.3d at 67; see In re Boston's, 244 F.3d at 168.

[15] See 1/10/23 Det. Hearing Tr., PageID #s 300-04.

were not only mutually acceptable but also enforceable.  The Court readily concludes that these circumstances would not create a reasonable doubt concerning this Judge's impartiality in the mind of a reasonable man.  See Kelley, 712 F.2d at 890.

Finally, Defendant's concern that the Government intends to introduce at trial this Judge's statements at his 2007 sentencing, regarding his prohibition of firearm possession, do not warrant recusal under section 455(b)(1) or 455(b)(5)(iv).  The Government represents that it "may seek to introduce a transcript of [Defendant]'s 2007 sentencing hearing to establish the knowledge-of-status element required under Rehaif v. United States, 139 S. Ct. 2191 (2019),"[16] which would necessarily include this Judge's statements to Defendant about his restriction on possessing firearms.  (See Gov. Opp. (ECF No. 129), PageID # 773.)  Defendant maintains that, "[e]ven if the Judge refuses to comment on his prior statements, his very role as the judicial officer presiding at defendant's trial may unfairly sway the jury."  (Def. Mot., PageID # 668.)   In support of this assertion, he invokes section 455(b), which requires a judge to recuse himself when he has "personal knowledge of disputed evidentiary facts concerning the proceeding" or he "[i]s to [his] knowledge likely to be a material witness."  28 U.S.C. §§ 455(b)(1) & 455(b)(5)(iv).  While the Government has indicated that it "may seek" to introduce this Judge's statements, it has offered no indication that it would also seek to call this Judge as a witness.  Additionally, there are a number of statements elsewhere in the 2007 sentencing transcript, made by Defendant's own counsel at the time, that the Government could seek to introduce in lieu of this Judge's statements. (See, e.g., 12/28/07 Sentencing Tr., PageID # 777 ("I'm the first to say that I want Mr. Giambro to know that he can't have a firearm or access to a firearm because that would be an offense and

---

[16] In Rehaif, the Supreme Court held that, to convict a defendant under 18 U.S.C. § 922(g) for possession of a firearm as a felon, "the Government [] must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [i.e. was a felon] when he possessed it."  139 S. Ct. at 2194.

that would be a very, very bad thing to do."); id., PageID # 779 ("Mr. Giambro as a convicted

felon can obviously not have access to the firearms.  That is a given; that would be an offense.").)[17]

Thus, the Court concurs with the Government that these concerns "may be appropriately addressed

by stipulations, redactions, and/or limiting instructions to the jury."  (See Gov. Opp., PageID #

774 n.8.)[18]  For these reasons, "to the judge's knowledge," he is not "likely to be a material

witness" a trial.  See 28 U.S.C. § 455(b)(5)(iv).[19]  To the extent that the Government seeks to admit

transcripts that include prior statements by this Judge, Defendant is certainly free to present any

and all objections to the admission of those statements.

   In sum, the Court concludes that the facts alleged in Defendant's Motion and Declaration,

which the Court has accepted as true, would not "prompt a reasonable question in the mind of a

well-informed person about the judge's capacity for impartiality in the course of the trial and its

preliminaries."  In re Bulger, 710 F.3d 42, 46 (1st Cir. 2013).[20]  This Judge is mindful that "the

impartiality of a judge is essential to the judicial process, and recusal is necessary when the

impartiality 'might reasonably be questioned.'"  United States v. Cain, 2020 WL 200644, at *2

(D. Me. Jan. 13, 2020) (quoting In re United States, 441 F.3d at 67).  However, because "there is

---

[17] Additionally, at the sentencing hearing, this Judge inquired as to whether Defendant had "received a copy of the written presentence investigation report as revised," and Defendant indicated that he had.  12/28/27 Sentencing Tr., PageID # 754.  Defendant also responded affirmatively when asked whether he had "discussed it thoroughly with" his counsel and understood its contents.  Id.  The first page of the PSR detailed the felony offense of which he was convicted and the potential penalties for such offense, which were ten years of incarceration, a $250,000 fine, and three years of supervised release.

[18] Moreover, this Judge's statements appear on the transcript as made by "the Court," rather than this particular Judge.  Thus, it is possible that a jury reviewing a redacted version of the 2007 sentencing transcript would not necessarily be informed that statements attributed to "the Court" were made by this Judge.

[19] It is also worth noting that "[a]ttempts to disqualify judges by indicating that the judge will be called as a witness are not favored . . . ."  United States v. Edwards, 39 F. Supp. 2d 692, 706 (M.D. La. 1999).

[20] While reaching this conclusion, the Court nonetheless notes that these filings contain a number of unfounded conclusory assertions and personal sentiments.  Such "claim[s] and [their] implications cannot themselves alone suffice to require [this] [J]udge's recusal."  In re Bulger, 710 F.3d at 46-47; see In re United States, 158 F.3d at 35 ("A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify [him]self because the aspersions, ex proprio vigore, create a cloud on [his] impartiality.").

no objective basis for recusal" here, this Judge "has a duty not to recuse himself." <u>In re United States</u>, 441 F.3d at 67.[21]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Recusal (ECF No. 128) is hereby DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 11th day of July, 2023.

---

[21] To the extent Defendant's Motion is motivated by this Court's denial of his motion to suppress and motion to dismiss, these judicial rulings "are proper grounds for appeal, not for recusal." <u>Liteky</u>, 510 U.S. at 555; <u>see</u> <u>In re United States</u>, 441 F.3d at 65 ("[C]ourts will reject what appear to be strategic motions to recuse a judge whose rulings have gone against the party."). Moreover, this Judge based those decisions on his assessment of the record and the applicable law. As such, contrary to Defendant's assertions, these rulings could not "reasonably be viewed as reflecting a determination to make good on" this Judge's "promise" that Defendant "would not 'be a very happy person' should he appear before the Judge on a gun possession charge." Def. Mot., PageID # 665. While Defendant evidently disagrees with this Judge's decisions, "the mere fact of an adverse ruling" in insufficient to establish bias, prejudice, or impartiality. <u>U.S. v. Giorgi</u>, 840 F.2d 1022, 1035 (1st Cir. 1988); <u>see</u> <u>In re United States</u>, 441 F.3d at 67 ("[A] judge's rulings and statements in the course of proceedings before him or her rarely provide a basis for recusal."); <u>see also</u> <u>Smith v. Danyo</u>, 585 F.2d 83, 86 (3d Cir. 1978) ("The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.").