UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:22-cr-00044-GZS |
| DARIO GIAMBRO, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S SECOND MOTION TO SUPPRESS**

Before the Court is Defendant's Second Motion to Suppress (ECF No. 222), which seeks suppression of fourteen specific exhibits as well as unidentified similar documents. Having reviewed the Motion, the Government's Response (ECF No. 231), Defendant's Reply (ECF No. 241), as well as all of the submitted exhibits, the Court DENIES the Motion.

**I.  BACKGROUND & PROCEDURAL HISTORY[1]**

There was a previous three-day jury trial in this matter, which was held from August 22-24, 2023. This trial ended in a mistrial after the jury failed to reach a verdict. In preparation for this August 2023 trial, the Government submitted a proposed exhibit list (ECF No. 179) on August 15, 2023. In relevant part, this exhibit list identified copies of ten different invoices and receipts (Gov't Exs. 47A-47J) and three pages of handwritten notes (Gov't Ex. 47K) (together, "Government Exhibit 47").[2] (ECF No. 179, PageID # 1328.) All eleven of these exhibits were

---

[1] To the extent relevant, the Court incorporates by reference the factual findings previously made in its prior Order on Motion to Suppress (ECF No. 120). See United States v. Giambro, No. 2:22-CR-00044-GZS, 2023 WL 3123001 (D. Me. Apr. 27, 2023).

[2] The Government's proposed exhibit list also listed three "photograph[s] of mail" (Gov't Exs. 48A-48C) (together, "Government Exhibit 48"). ECF No. 179, PageID # 1328. The Government did not move to

found as a result of the execution of a state search warrant on Defendant's home in Hebron, Maine. This search warrant, dated January 26, 2022, allowed for the seizure of "[a]ny and all firearms to include paperwork or other records that demonstrate the sale, exchange, ownership or control over said firearms." (ECF No. 222-1, PageID # 2393.) All told, the execution of the search warrant took three days and resulted in the seizure of over 800 firearms. (ECF No. 214, PageID # 2019; ECF No. 215, PageID # 2206.)

Some of the firearms seized as a result of this warrant formed the basis for the pending Indictment and Defendant's arrest on May 13, 2022. After making his initial appearance and securing appointed counsel, Defendant formally requested discoverable information from the Government via a letter dated May 18, 2022. (See ECF No. 241-2, PageID #s 2550-53.) On May 26, 2022, the Government made an initial production of discoverable information to Defendant's counsel in accordance with Federal Rule of Criminal Procedure 16.[3] (See ECF No. 231-4, PageID # 2487.) This production included a copy of the Maine State Police Evidence Control Sheet ("Control Sheet") (See ECF Nos. 231, PageID # 2469 & 231-3.) The Control Sheet consisted of a log of 1092 items seized pursuant to the search warrant. (ECF No. 231-3, PageID # 2484.) Item 961 on the log is described as "Box of receipts" found in the "Gun Storage Room" on the Hebron property. (ECF No. 231-3, PageID # 2485.) In its letter producing the Control Sheet, the

---

admit Government Exhibit 48 at trial. In response to the pending Motion, the Government represents that these proposed exhibits "were provided to the government during preparations for the first trial by a mail carrier who route covered the searched property." ECF No. 231, PageID # 2475 n.1. Thus, the Government did not obtain these documents as a result of the search warrant. As a result, the Court need not further consider Defendant's suppression arguments that are based upon the mistaken assertion that Government Exhibit 48 reflects items seized as a result of the search warrant.

[3] This letter was not addressed to Defendant's current counsel, Attorney MacColl, who entered his appearance on behalf of Defendant on December 22, 2022. See ECF No. 59.

Government indicated that items described on the Control Sheet "will be made available for your inspection at a mutually convenient time." (ECF No. 231-4, PageID # 2487.)

With trial set to begin on August 22, 2023, Defendant's counsel emailed the Government on July 17, 2023, requesting the opportunity to "inspect the items seized from Mr. Giambro's home." (ECF No. 231-5, PageID # 2494.) While the initial response from the Government focused on coordinating an inspection of the firearms seized, on July 26, 2023, the Government confirmed that the Maine State Police were still in possession of non-firearm-related items, including Item 961. (See ECF No. 231-5, PageID #s 2489-93.) The Government provided a Maine State Police contact number for Defense counsel to arrange viewing the items.

Ultimately, counsel for both Government and Defendant reviewed the contents of Item 961 on August 11, 2023. (See ECF No. 241-1, PageID # 2548.) As requested, Maine State Trooper Fillebrown made photocopies of certain items in the box. (ECF No. 214, PageID #s 2021-22.) At the August 2023 trial, Trooper Fillebrown testified. (See generally id., PageID #s 2004-37.) As part of his direct testimony, he identified photocopies of 11 items from the box, totaling 13 pages, which were admitted over Defendant's hearsay objection with a limiting instruction. (Id., PageID #s 2022-26; see also ECF No. 206, PageID # 1924 (noting admission of Gov't Exs. 47A-47K over objection).) Trooper Fillebrown also identified "a receipt for veterinary services provided to Tony Giambro," which was found in the box and entered into evidence without objection as Defendant's Exhibit 10. (ECF No. 214, PageID #s 2022-26; see also ECF No. 206, PageID # 1924 (noting admission of Def. Ex. 10 without objection).)

After a mistrial was declared, Defense counsel for the first time indicated a potential objection related to the delayed production of some exhibits admitted at trial. He then notified the

Court that Defendant would seek to file a supplemental motion to suppress.[4] (See ECF No. 216, PageID # 2371.)

II.   **DISCUSSION**

   **A. Government Exhibit 47 was not seized in violation of the search warrant.**

Defendant's Motion initially asserts that the exhibits in question should be suppressed because they fall outside the description of items that were to be seized under the terms of the search warrant. Specifically, Defendant contends that the search warrant limited the paperwork that could be seized to records that "demonstrate the . . . ownership or control over [any seized] firearms." (ECF No. 231-1, PageID # 2480.)

As the First Circuit has recently reiterated, "'search warrants and affidavits should be considered in a commonsense manner, and hypertechnical readings should be avoided.'" United States v. Perez Soto, -- F.4th ----, No. 20-1018, 2023 WL 5266284, at *7 (1st Cir. Aug. 16, 2023) (quoting United States v. Rogers, 521 F.3d 5, 10 (1st Cir. 2008) & United States v. Bonner, 808 F.2d 864, 868 (1st Cir. 1986)). "[O]fficers executing a search warrant are 'required to interpret it,' and they are 'not obliged to interpret it narrowly.'" United States v. Tiem Trinh, 665 F.3d 1, 16 (1st Cir. 2011) (quoting United States v. Stiver, 9 F.3d 298, 302 (3rd Cir. 1993) & Hessel v. O'Hearn, 977 F.2d 299, 302 (7th Cir. 1992)). With respect to the execution of a warrant allowing for the seizure of documents, the First Circuit has explained that officers may "search anywhere such documents could be hidden, which would include pockets in clothing, *boxes*, file cabinets and files." Perez Soto, 2023 WL 5266284, at *7 (emphasis added).

---

[4] In response, the Court noted that counsel would "certainly have more than 30 days to review any exhibits before the next trial." ECF No. 216, PageID # 2371.

4

To the extent Defendant appears to argue that the officers were required to review all of the documents in the box and limit its seizure to only those documents that appeared to reference firearms and ammunition explicitly, the Court disagrees.[5] Given the nature of the description on the Control Sheet, it is apparent that the officers did properly look in the box and determine it contained receipts, at least two of which pertained to firearms. Specifically, Government Exhibit 47A appears to be an August 2000 invoice addressed to "D Giambro" reflecting the purchase of ammunition. Government Exhibit 47K reflects handwritten notes referencing prices for various firearms and ammunition. While the other documents in Government Exhibit 47 are not explicitly related to firearms, they nonetheless provide circumstantial evidence that Defendant controlled this box of receipts (aka Item 961) as well as the space where the box was located.[6] As noted on the Control Sheet, Item 961 was located in the same room as many of the seized guns. (See ECF No. 231-3, PageID # 2485 (noting the specific location as "Gun Storage Room"; ECF No. 214, Page ID # 2051 (explaining that the "gun storage room" was a term used to describe the master bedroom where "the majority" of the seized firearms were located). In short, having reviewed Government Exhibit 47, the Court readily concludes these seized documents fall within the category of paperwork that demonstrates Defendant's ownership or control over the seized

---

[5] In his Reply, Defendant asserts that the box contained "hundreds of documents of various sizes, shapes, and descriptions" and notes "the vast majority were not offered at the first trial." ECF No. 241-1, PageID # 2548, ECF No. 241, PageID # 2544. On the record provided, the Court need not and cannot determine whether "hundreds" of other apparently irrelevant documents, which the Court has not been asked to review, might be subject to suppression or simple exclusion under the Federal Rules of Evidence.

[6] Defendant arguably used this same common sense principle when he moved the admission of Defendant Exhibit 10 and suggested it provided circumstantial evidence that Defendant's son lived in the Hebron trailer.

firearms. As such, the Court concludes that Government Exhibit 47 consists of documents that were properly seized under the particular descriptions contained in the warrant.[7]

### B. Government Exhibits 47 & 48 are not subject to exclusion based on belated disclosure in violation of Federal Rule of Criminal Procedure 16.

Defendant next asserts the Court should exclude Government Exhibits 47 and 48 under Rule 16(d)(2) claiming that Government Exhibit 47 and proposed Government Exhibit 48 were belatedly disclosed to Defense counsel on August 11, 2023. (See ECF No. 222, PageID # 2391.) In response, the Government has explained its production process, as already summarized above, and asserts that Defendant "waited until 'the eve of trial' to avail himself of [the] opportunity" to inspect items despite the Government's initial May 2022 offer. (ECF No. 231, PageID # 2475.)

Putting aside the questions of actual delay in production and any bad faith on the part of the Government, Defendant's request to have these documents excluded from the upcoming trial is readily resolved based on the lack of prejudice to Defendant. Simply put, Defendant has failed to demonstrate any prejudice associated with the August 11 disclosure of Government Exhibits 47 and 48. Rather, by the time trial commences, Defendant will have had sixty days to review the 16 pages he now seeks to have excluded. Moreover, the Court notes that Defense counsel did not raise any issue with respect to belated disclosure prior to the start of the first trial on August 22 and did not seek any continuance on that basis. See United States v. Candelaria-Silva, 162 F.3d 698, 703 (1st Cir. 1998) (holding "failure to request a continuance resolves [the] delayed discovery claim"). Then, at trial, Defendant did not offer any objection to the exhibits related to the now alleged discovery violation. In fact, at the August trial, Defense counsel was able to use

---

[7] Given this conclusion, the Court declines to address the Government's alternative argument that Government Exhibit 47 was properly seized under the "plain view" doctrine. See ECF No. 231, PageID #s 2472-75.

information produced on August 11 and strategically point out the limitations of Government Exhibit 47 to the jury.  See United States v. Kifwa, 868 F.3d 55, 62 (1st Cir. 2017) ("[O]ne way of evaluating potential prejudice from delayed disclosure is to 'evaluate how well defense counsel was able to use the information despite the delay.'") (quoting United States v. Osorio, 929 F.2d 753, 758 (1st Cir. 1991)).

Thus, in an exercise of its discretion and in the absence of finding that the delayed production was the result of bad faith by the Government, the Court will not suppress Government Exhibits 47 and 48.[8]  See Candelaria-Silva, 162 F.3d at 703 (explaining that suppression is not proper "when it is grossly disproportionate both to the prosecutor's nonfeasance and any prejudice to the defense.") (internal quotations omitted).

### C. Government Exhibit 47 and the seized box of receipts are not the fruit of an illegal search.

Finally, Defendant renews suppression arguments previously presented to this Court, which the Court construes as a belated request for reconsideration.  Specifically, he argues that the Court "misstated the relevant rule of law" and cites Michigan v. Fisher, 558 U.S. 45 (2009).  (ECF No. 222, PageID # 2392.)  In its April 27, 2023 Order on Motion to Suppress (ECF No. 120), the Court in fact cited Fisher five times.  (See ECF No. 120, PageID #s 595, 596, 598 & 600.)  While Defendant now appears to take issue with the Court's use of the word "potentially" in its decision, this word choice reflected the simple reality that the Court was necessarily discussing the totality of the circumstances presented in hindsight; as such, it was not an attempt to lower the bar for application of the emergency aid exception.  Ultimately, the Court then concluded "based on the totality of the circumstances that the officers had 'an objectively reasonable basis for believing

---

[8] Likewise, the Court declines Defendant's request to exclude "all similar documents seized from the premises" that he had an opportunity to review on August 11, 2023.  ECF No. 241, PageID # 2546.

that' Arline was in the house and 'in need of immediate aid.'" (Id., PageID # 600 (quoting Fisher, 558 U.S. at 47 (internal quotation marks and citations omitted)).  The Court finds no basis to reconsider this conclusion.

### III.     CONCLUSION

For the reasons just given, Defendant's Second Motion to Suppress (ECF No. 222) is DENIED.

SO ORDERED.

                                                  /s/ George Z. Singal  
                                                  United States District Judge

Dated this 22nd day of September, 2023.