UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:22-cr-00044-GZS |
| DARIO GIAMBRO, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S THIRD MOTION TO SUPPRESS[1]**

Before the Court is Defendant's Motion to Suppress Fruits of Curtilage and Grave Searches, Request to Allow Motion & Request for Hearing (ECF No. 257). Having reviewed the expedited briefing along with the entire docket, the Court has determined that no additional hearing is necessary and DENIES the Motion for reasons briefly stated herein.

**I.      The Third Motion to Suppress is Untimely and Presents Waived Arguments.**

In the Court's view, the pending Motion is subject to denial on the simple basis that it is untimely without good cause. See Fed. R. Crim. P. 12(c)(3). To the extent Defendant asserts the pending Motion is "plainly timely," the Court disagrees. (ECF No. 257, PageID # 2937.) Upon Defendant's initial appearance, the Court set an initial motions deadline of June 1, 2022. (ECF No. 14, PageID # 16.) After allowing multiple extensions of this deadline, the final motions

---

[1] The Court incorporates by reference the findings and procedural history that have been laid out in the Court's two prior orders on motions to suppress (ECF Nos. 120 & 245).

deadline was set for February 28, 2023.  (ECF No. 90, PageID # 350.)  Having filed the pending Motion on September 27, 2023, Defendant's filing is plainly untimely.[2]

Federal Rule of Criminal Procedure Rule 12(c) provides that the Court can consider untimely motions in accordance with "the good cause standard," which requires "a showing of both cause (that is, a good reason for failing to file a motion on time) and prejudice (that is, some colorable prospect of cognizable harm resulting from a failure to allow the late filing)."  United States v. Santana-Dones, 920 F.3d 70, 81 (1st Cir. 2019).  The third Motion to Suppress fails on both prongs.

First, Defendant has not shown a good reason for his belated filing.  Having filed a timely initial Motion to Suppress (ECF No. 65) on December 29, 2022, and also filed a second Motion to Suppress (ECF No. 245) on September 22, 2023, Defendant was clearly able to file sooner. Moreover, there is nothing in the pending Motion regarding the facts and circumstances of the searches at issue that Defendant did not know prior to the February 28 filing deadline.  Defendant asserts the cause for his delay is that he "did not anticipate the government's proposal to introduce evidence of the grave, nor of the death certificate." (ECF No. 257, PageID # 2938.)  However, Defendant's failure to correctly anticipate how the Government might use the results of a search does not generally provide good cause for filing a motion to suppress on the eve of a retrial.[3]

---

[2] To the extent that Defendant argues that his Motion should be viewed as timely because the Government only mailed the Death Certificate to Defense counsel on September 14, 2023, the Court is not persuaded.  Rather, the Death Certificate (ECF No. 250-1) was filed with the State of Maine on February 22, 2022.  The Court takes judicial notice of the State's process for requesting death certificates, under which Arline Giambro's death certificate was readily available to Defendant since the date of filing.  See https://www.maine.gov/dhhs/mecdc/public-health-systems/data-research/vital-records/order/index.shtml (last visited 10/5/23).

[3] In his motion papers, Defendant suggests that the timing of the Government's disclosure of the death certificate ran afoul of Rule 12(b)(4)(B) citing Defendant's discovery request in June 2022.  See ECF No. 272, PageID #s 3028 & 3030.  However, by its terms, any such request applies to evidence that is discoverable under Rule 16, which in turn only encompasses evidence within the Government's control.  See, e.g., United States v. Poulin, 592 F. Supp. 2d 137, 142 (D. Me. 2008).  Here, the Government represents that it received the death certificate on September 11, 2023, and then produced it on September 14, 2023.  See ECF No. 264-1, PageID # 2968.  The Court additionally notes that the

Here, the record actually suggests that Defense counsel had anticipated the Government's use of the evidence at issue no later than August 16, 2023. On that day, at a pretrial management conference, Defense counsel indicated on the record that the Government might seek "to introduce evidence of Mrs. Giambro's death and/or the officers' motivation in . . . entering the property" and acknowledged a "Fourth Amendment issue" in this regard. (ECF No. 213, PageID #s 1962-63.) In response, the Government indicated that it would not seek to introduce evidence regarding the circumstances surrounding Mrs. Giambro's death with one exception: "there's one scenario where the fact that [Mrs.] Giambro was found outside might be relevant. If the defendant argues that it's not his residence or that he wasn't connected to the residence or anything, the fact that his wife is located outside would become relevant." (Id., PageID # 1963.) In response to the Government's proffer of this scenario, Defense counsel noted, "we respect the Court's ruling on the motion to suppress and it controls the trial."[4] (Id., PageID # 1964.) In short, on the record presented, it appears Defendant made a "tactical decision" not to press the arguments presented in his third Motion to Suppress earlier in this case; as the First Circuit has previously held, such a "tactical decision" cannot provide a good reason to excuse untimely motions under Rule 12. United States v. Santos Batista, 239 F.3d 16, 20 (1st Cir. 2001) (finding "a mere tactical decision to delay efforts to suppress evidence until it is adduced at trial does not come close to meeting [the good cause standard]") (citing United States v. Nunez, 19 F.3d 719, 722 (1st Cir. 1994)). Beyond failing to show the requisite cause under Rule 12(c)(3), such an intentional decision amounts to a

---

certificate itself was apparently created and issued on September 6, 2023. See ECF No. 250-1, PageID # 2910. In short, the Court sees no delay in the Government's production of the death certificate.

[4] Defense counsel thereafter indicated there "may be" an issue as to Mr. Giambro's residence at the Hebron property in response to the Court's direct follow up question: "Is there an issue whether that's his home?" ECF No, 213, PageID # 1964. As the Government detailed in its Response, at the August 2023 trial, Defense counsel argued that the "principal issue" was who lived at the Hebron property in January 2022. ECF No. 271, PageID # 3009-11 (quoting ECF No. 2215, PageID # 2315).

waiver.  See, e.g., United States v. Campbell, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) ("Waiver directly implicates the power of the parties to control the course of the litigation; if a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision."), cert. denied, 143 S. Ct. 95 (2022).

As to the second prong, the Court concludes that Defendant cannot show prejudice.  Rather, the Court's prior ruling on his first Motion to Suppress implicitly encompasses the curtilage search issues he now presses in his belated third Motion to Suppress.[5]  Notably, in his first Motion, Defendant initially indicated that he was seeking to suppress "all evidence gathered as a direct or indirect result of the warrantless search of Mr. Giambro's residence and properties on or after January 26, 2022." (ECF No. 65, PageID # 172.)  At the time, Defendant and his counsel were fully aware that the body of Mrs. Giambro was found during the initial warrantless search of the Hebron property and that finding was detailed in the search warrant affidavit.  After a full evidentiary hearing, Defendant's Post-Hearing Memorandum asked the Court to focus on a "central question," namely "whether law enforcement officials are always entitled to break into a private home if they have information that a resident died and her body is 'unaccounted' for." (ECF No. 111, PageID # 413.)  On the record presented and "judged from the perspective of a reasonable officer on the scene at the time," the Court ultimately concluded that the emergency aid exception allowed for the warrantless search of the Hebron residence up until the moment that officers located the body of Arline Giambro.  (ECF No. 120, PageID# s 599-600.)  Given that the emergency aid exception applies equally to the search of the curtilage of the Hebron property, the

---

[5] In the already discussed conference of counsel on August 16, 2023, Defense counsel appeared to acknowledge this reality when he indicated that the Court's Order on Motion to Suppress (ECF No. 120) would control at the upcoming August trial if the Government sought to admit evidence related to the location of Mrs. Giambro's body on January 26, 2022.  See ECF No. 213, PageID # 1964.

4

Court fails to see how Defendant is prejudiced by a failure to take up the merits of his third Motion to Suppress, which was filed less than two weeks prior to the scheduled retrial of this case. Rather, the Court has already had occasion to consider the bulk of the arguments presented in Defendant's third Motion to Suppress even though Defendant failed to explicitly request the Court consider Mrs. Giambro's body and death certificate as "fruit" of that search.

II.     **The Third Motion to Suppress Fails on the Merits.**[6]

Although the Court concludes the Motion is untimely and presents arguments that were previously waived, in an abundance of caution, the Court alternatively addresses the merits of the third Motion to Suppress. On the merits, the Court explicitly incorporates all of its earlier factual findings. (See ECF No. 120, PageID #s 588-93.)

As already indicated, the Court concludes based on these findings, that the warrantless search of the curtilage of the Hebron property that was undertaken while Mrs. Giambro was missing and unaccounted for was justified under the emergency aid exception. See, e.g., United States v. Owens, 917 F.3d 26, 34 (1st Cir. 2019) (explaining that for Fourth Amendment purposes a house's curtilage is subject to warrant requirements just as inside the house). Understandably, the winter weather, along with the totality of the circumstances, justified officers initially focusing their search for Mrs. Giambro inside the residence. However, upon not finding her in the house, the officers had "an objectively reasonable basis for believing that" Arline was located somewhere else on the premises and "in need of immediate aid." Michigan v. Fisher, 558 U.S. 45, 47 (2009)

---

[6] The Court undertakes this approach for the benefit of creating a full record on appeal. See United States v. Galindo-Serrano, 925 F.3d 40, 47 (1st Cir. 2019) ("A District Court may opt to address a waived claim simply to create a record in the event that the appellate court does not deem the argument waived.") (cleaned up).

5

(per curiam) (internal quotation marks and citations omitted). Thus, the Court declines Defendant's invitation to find the curtilage search unconstitutional.

The Government alternatively argues that the inevitable discovery doctrine should be applied to the death certificate. (See ECF No. 271, PageID #s 3020-24.) "Under that exception to the exclusionary rule, 'if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . the evidence should be received.'" United States v. Soto-Peguero, 978 F.3d 13, 20 (1st Cir. 2020) (brackets in original omitted) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). The Government bears the burden on this exception to the exclusionary rule. See United States v. Fagan, 71 F.4th 12, 23 (1st Cir. 2023). To assess an invocation of inevitable discovery by the Government, the First Circuit instructs courts to consider three questions. See id. "[F]irst, whether the legal means by which the evidence would have been discovered was truly independent; second, whether the use of the legal means would have inevitably led to the discovery of the evidence; and third, whether applying the inevitable discovery rule would either provide an incentive for police misconduct or significantly weaken constitutional protections." Id. (quoting United States v. Almeidia, 434 F.3d 25, 28 (1st Cir. 2006)). Even if there had been no warrantless search of the Hebron property, the preponderance of the evidence establishes that the police and her son would have continued to search for Mrs. Giambro.[7] Thus, the Court concludes that the body of Mrs. Giambro would have been discovered eventually. Once discovered, Mrs. Giambro's death would necessarily be recorded on a death certificate as required by Maine law. See generally 22 M.R.S.A. § 2842. Finally, the application of the inevitable discovery rule to the death certificate at issue here would

---

[7] Contrary to Defendant's latest assertions that Mrs. Giambro was interred in a "partially-completed grave," ECF No. 272, PageID # 3029, the Court has previously found that the body of Mrs. Giambro was "wrapped in cloth and plastic" and found under "an unhinged door on top of the snow." ECF No. 120, PageID # 593.

not weaken any constitutional protections or incentivize police misconduct. Thus, the Court alternatively concludes that the death certificate is not subject to suppression under the inevitable discovery doctrine.

For the reasons just stated, the Court DENIES Defendant's Third Motion to Suppress (ECF No. 257).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 5th day of October, 2023.