UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00044-LEW |
| | ) | |
| DARIO GIAMBRO | ) | |
| | ) | |
| Defendant | ) | |

## **ORDER**

This matter is before the Court on Defendant Dario Giambro's Motion for Return of Funds (ECF No. 354).  The Motion is DENIED.

## **BACKGROUND**

Movant Dario Giambro was indicted in April 2022 for knowingly possessing sixteen firearms as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a).  At his initial appearance that May, the Court provisionally appointed counsel pursuant to the Criminal Justice Act (CJA), and Giambro was ordered temporarily detained.  *See* Order of Temporary Detention (ECF No. 12).  Following a hearing, a magistrate judge ordered Giambro detained pending trial.  *See* Order of Detention Pending Trial (ECF No. 15).  Two months later, the Court granted Giambro's request to appoint new CJA counsel.  Five months after that, in December 2022, Attorney MacColl, who was privately retained, entered his appearance on behalf of Giambro, and Giambro's previously appointed CJA counsel withdrew.  With the assistance of his then-newly retained counsel, Giambro moved to reopen the detention hearing, which resulted in his release with conditions pending trial

on a $1,000,000 appearance bond.  Following colorful and extensive pretrial proceedings and one mistrial, a jury found Giambro guilty of possession of a firearm by a prohibited person in October 2023.  Throughout these proceedings, and pending sentencing after his conviction, Giambro was released on the same conditions.

Following Giambro's conviction, but before sentencing, the Government filed a Motion for Payment of Fines, Assessments and Penalties (ECF No. 296), seeking (in part) an order that would direct a portion of the funds deposited in connection with Giambro's $1,000,000 appearance bond towards the reimbursement of the costs of Giambro's court-appointed counsel pursuant to 18 U.S.C. § 3006A(f).  In opposition, Giambro argued that the efforts of appointed counsel neither furthered his defense nor reduced the expense of retained counsel.  At Giambro's sentencing hearing, Judge Singal heard argument on this motion and ordered $11,413.52—the amount paid out of the CJA fund to cover costs associated with Giambro's court-appointed representation—transferred to the CJA Fund from Giambro's appearance bond.  *See* Order Regarding Bail (ECF No. 311).

Giambro appealed his conviction to the First Circuit, challenging the denial of his motion to suppress evidence that he argued was acquired in violation of the Fourth Amendment.  The First Circuit agreed and vacated his conviction on January 15, 2025.  In March 2025, the Government sought leave to dismiss the indictment, which motion I granted.  In connection with dismissal of the indictment, I also ordered the refund of the $100 special assessment and $250,000 fine imposed as part of Giambro's sentence.  *See* Order (ECF No. 352).  Giambro now seeks the return of the $11,413.52 CJA reimbursement as well.

2

## DISCUSSION

The CJA provides for "representation for any person financially unable to obtain adequate representation," 18 U.S.C. § 3006A(a), and further provides:

> Whenever the United States magistrate judge or court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to [§ 3006A(e)] to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

*Id*. § 3006A(f); *see also id*. § 3006A(c) ("If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.").

The only ground to which Giambro points for reopening the issue of CJA reimbursement is the First Circuit's decision vacating his conviction. Section 3006A(f) conditions repayment upon a finding "that funds are available for payment from or on behalf of a person furnished representation," not upon the outcome of the case. I therefore struggle to see how the First Circuit's decision vacating Giambro's conviction has any effect on the fate of the funds in question. *See United States v. Robertson*, 980 F.3d 672, 674-78 (9th Cir. 2020) (holding that a CJA reimbursement order, unlike fines and restitution imposed as a sentence, was not subject to abatement as a result of the defendant's death, and observing that the reimbursement order "was imposed on a basis independent

3

from the determination of [the defendant's] guilt or innocence—namely, a reassessment of his financial condition"); *United States v. Standiford*, 148 F.3d 864, 870 (7th Cir. 1998) (CJA reimbursement order "is not part of the sentence," and instead "must be regarded as an independent civil liability imposed by the court pursuant to 18 U.S.C. § 3006A(f).").

In support of his request for the return of the funds allocated to the reimbursement of the CJA fund, Giambro points to alleged deficiencies in the performance of his appointed counsel, arguing that the legal services he received from his appointed counsel were of no value to him.[1]  This is essentially the same argument Giambro made to Judge Singal in the first instance.  *See* Def. Resp. to Mot. for Payment of Fines, Assessments, and Penalties (ECF No. 297).  Judge Singal rejected those arguments, and I see no reason to reopen that decision now.

"What the [CJA] gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel."  *United States v. Wilson*, 597 F.3d 353, 357 (6th Cir. 2010).  There is no dispute here that Giambro was "financially able" to weather the redirection of a small portion of his $1,000,000 appearance bond to the reimbursement of

---

[1] Specifically, Giambro faults his appointed counsel for (1) failing to contest the government's (mistaken) assertion that Giambro was subject to a presumption of pretrial detention under the Bail Reform Act, (2) failing to assist Giambro in gaining access to his bank account, (3) failing to file a motion to dismiss Giambro's indictment on Second Amendment grounds, and (4) failing to file a motion to suppress. Giambro does not appear to go so far as to claim that his appointed counsel's performance was so deficient as to amount to constitutionally ineffective assistance, nor does he explicitly argue that his appointed counsel committed malpractice.  Somewhat confusingly, he also argues that the forfeiture of seized firearms (which counsel estimated were worth $362,107) "might well have failed or stalled if court-appointed counsel had timely asserted that the seizure was accomplished only by violating Mr. Giambro's Fourth Amendment rights."  Mot. at 5.  I fail to see—nor does the motion explain—the relevance of this piece of speculation.  Moreover, Giambro's prior felony conviction made those firearms contraband in his possession, Fourth Amendment issues notwithstanding.

the $11,413.52 expended from the CJA fund on his behalf—funds which are needed to provide counsel to defendants who are unable to pay for legal services.

## CONCLUSION

Defendant's Motion for Return of Funds (ECF No. 354) is DENIED.

SO ORDERED.

Dated this 20th  day of May, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge